**COCHRAN et al., Appellees,**

v.

**NORTHEAST OHIO ADOPTION SERVICES; Portage County Department of Human Services, Appellant.**

[Cite as *Cochran v. Northeast Ohio Adoption Serv.* (1993), 85 Ohio App.3d 750.]

Court of Appeals of Ohio,
Portage County.

No. 92–P–0063.

Decided April 1, 1993.

*Dominic J. DeLaurentis, Jr.,* and *Glenn Osborne,* for appellees.

*David W. Norris,* Portage County Prosecuting Attorney, and *Roxana R. Lyle,* Assistant Prosecuting Attorney, for appellant.

Ford, Presiding Judge.

This accelerated calendar appeal comes from the Portage County Court of Common Pleas. Appellant, Portage County Department of Human Services ("DHS"), appeals from the trial court's May 28, 1992 order, altered by its June 29, 1992 judgment *nunc pro tunc,* granting appellees' motion for inspection and discovery of adoption records. DHS timely filed its notice of appeal from the original order on June 29, 1992.

Appellees are the adoptive parents of a child, J.C. The final order of adoption was entered on or about March 1983, in the Portage County Probate Court. Appellees alleged in a complaint filed July 2, 1990, that defendants, DHS, Northeast Ohio Adoption Services ("NOAS"), and named employees of each agency defendant made material misrepresentations regarding the history and health of the child and his natural family. Appellees claimed that these misrepresentations caused them financial loss, and sought to recover damages. DHS was legal custodian of the child prior to the adoption.

On February 13, 1991, appellees filed a request for production of documents seeking to obtain records of DHS concerning J.C. DHS obtained a protective order on April 1, 1991 pending resolution of proceedings in probate court. As a result of that order, the probate court forwarded the records, under seal, to the trial court for purposes of determining what, if any, confidential and sealed records should be released.

On May 28, 1991, appellees moved for release of the adoption records of J.C. pursuant to R.C. 3107.17(B) and Civ.R. 26. Also on that date, after a hearing on the motion, the court ordered that DHS "File Folder C" be released to the parties, and that the documents therein remain confidential pending a ruling on their admissibility. On July 19, 1991, NOAS filed an inventory list of its sealed records with the court, which was made part of the record and transmitted to this court on appeal.

On August 15, 1991, after inspection of the released file, appellees moved for release of additional adoption records. At this point, the facts become somewhat unclear. Appellant avers in its brief that a list of documents in its adoption file was prepared by its counsel and submitted to the court and all counsel *in camera.* Appellant also avers that the court and counsel subsequently agreed that the list would be compiled *only* for review by the parties. However, as appellant admitted during oral argument, such agreement is not formally part of the record as transmitted to us. The language employed in appellees' motion for inspection merely implies that such an agreement existed.

The motion stated that the summary listing was "previously provided to the *court and to counsel.*" (Emphasis added.) It further states that "[i]n accordance

with *prior discussions between the court and the parties,* counsel suggest the following procedural safeguards * * *, * * * that they [counsel] be permitted to review each of the documents on the following list * * * under whatever supervision the court deems appropriate."

Despite this confusion, the record before this court firmly reveals that on March 12, 1992, appellees moved for inspection and discovery of adoption records from the files of both DHS and NOAS. Included in this motion was a detailed summary listing of the folders and document titles requested for inspection, together with appellees' descriptions of the expected contents of each folder.

It is out of this motion for inspection that the instant controversy arises. First, as stated, in its motion for inspection and discovery of documents from DHS's file, appellees elected to file a complete and detailed list of the allegedly confidential file documents, thus making this list and the suspected file contents part of the public record. Appellant alleges that this list constitutes a breach of confidentiality because it discloses the factual bases of the files.

Second, on June 29, 1992, in a nunc pro tunc entry containing Civ.R. 54(B) language, the trial court determined that the documents listed and referred to in appellees' motion for inspection were discoverable "(1) to the extent that counsel may inspect the documents and compile a list of the documents that counsel feel are admissible, and (2) to the extent that counsel may not reveal the contents of any document, except to the Court in the hearing * * *."

Appellant contends that these disclosures breach the pledge of confidentiality to which the parties allegedly agreed. Appellant also contends that regardless of any confidentiality agreements, the contents of the files are confidential pursuant to statute.

Appellant assigns the following as error:

"The trial court erred in granting the motion of plaintiffs-appellees to release additional adoption and pre-adoption records of J.C. and his natural family."

Appellant advances several arguments under this assignment of error. It argues first that the trial court's order allowing disclosure of allegedly confidential information is a final order for purposes of appellate review. Appellant bases its argument in part on *Humphry v. Riverside Methodist Hosp.* (1986), 22 Ohio St.3d 94, 22 OBR 129, 488 N.E.2d 877, and *Chef Italiano Corp. v. Kent State Univ.* (1989), 44 Ohio St.3d 86, 541 N.E.2d 64.

We note at the outset that we cannot comfortably analyze this issue under the auspices of Civ.R. 54(B) because the trial court has not yet finally determined the parties' claims as to the admissibility of the records. However, the issue as to whether the discovery order is final and appealable can be appropriately analyzed under *Riverside* and treated as a special proceeding.

Appellant correctly sets forth the test to be followed in determining whether an order is final and immediately appealable as defined in R.C. 2505.02. "The party seeking immediate review must show that a substantial right has been affected and that the order was made in a special proceeding." *Humphry,* 22 Ohio St.3d at 96, 22 OBR at 130, 488 N.E.2d at 878.

█ We note by way of prologue that the general rule in Ohio is that a discovery order is not a final order and therefore not subject to immediate appellate review. *Voss v. Voss* (1989), 62 Ohio App.3d 200, 203, 574 N.E.2d 1175, 1177. However, exceptions have been recognized when discovery orders affect a substantial right in a special proceeding pursuant to R.C. 2505.02. *Id.*

█ Appellant argues that a substantial right has been affected in the instant case because of the confidentiality of the information sought by appellees. Appellant further argues that the order of disclosure has been made in a special proceeding because the court engaged in an exercise weighing the "harm to the 'prompt and orderly disposition of litigation,' and the consequent waste of judicial resources resulting from the allowance of an appeal, with the need for immediate review because appeal after judgment is not practicable." *Humphry,* 22 Ohio St.3d at 96, 22 OBR at 131, 488 N.E.2d at 878–879. We agree that the need for immediate review exists here, and that judgment after appeal would not be practicable.

First, this alleged agreement of confidentiality between the court and counsel is not specifically demonstrated by the record, as appellant admits, which makes it difficult for us to determine, on this basis, that a substantial right has been affected. However, the record does not reflect a timely objection by appellant as to the detailed list attached to appellees' "motion for inspection." We do not treat appellant's "memorandum in opposition" alone as a proper evidential objection, and we have no transcript reflecting the alleged oral objection made by appellant during the proceedings. Accordingly, the detailed listing attached to appellees' motion is treated as part of the record for our purposes. The possibility of potential disclosure posed by the public unveiling of this list raises enough of an issue as to whether or not a substantial right is affected to bring the order under the specter of *Humphry.* Thus, the trial court's discovery order is a final order for purposes of appellate review.

Second, we now address appellees' argument that the need for immediate review is obvious in this matter because once counsel views the contents of the files, the proverbial "cat" will be "out of the bag." We note, however, that it is accepted practice in a protective order situation to allow counsel alone to view the documents during the course of the litigation at hand. Therefore, as long as this protective order is honored—and we have no reason to believe otherwise here—

no harm will ensue from the release to counsel alone of the actual file contents before final judgment is rendered. We do agree, however, that if the contents of the files were to be disclosed either before or after the ensuing litigation, such disclosure would certainly result in irreversible harm.

■ Appellant advances in its second argument that according to Ohio law, the DHS records are confidential and not discoverable. Appellant claims that the records sought by appellees are confidential pursuant to R.C. 5153.17, and that there are no exceptions to this disclosure. R.C. 5153.17 states that the records required to be kept by the department of human services "shall be confidential, but shall be open to inspection * * * by other persons, upon the written permission of the executive secretary." Appellant posits that R.C. 5153.17 covers confidential, pre-adoption information regarding interested non-party individuals like J.C.

Appellant further argues that the statute upon which appellees rely, R.C. 3107.17(B), does not apply. R.C. 3107.17(B) states that:

"All papers, books, and records pertaining to a *placement* * * * or an *adoption*, whether part of the permanent record of the court or of a file in the department of human services or in an agency, are, except as provided in division (D) of this section, subject to inspection *only upon consent of the court.*" (Emphasis added.)

Appellant asserts that R.C. 3107.17(B) is not applicable because the documents appellees seek pertain to the social and medical history of J.C.'s natural parents and are covered under R.C. 3107.17(D) and 5153.17. There are several problems with appellant's reasoning as to which sections of the Revised Code apply.

First, R.C. 3107.17 specifically concerns adoption and placement records. R.C. 5153.17 governs confidential department of human services records; however, it makes no mention of adoption records specifically. R.C. 3107.17(B) states that records pertaining to a placement or adoption are subject to inspection "whether part of the permanent record of the court *or of a file in the department of human services or in an agency,*" thus incorporating the confidential department of human services records referred to in R.C. 5153.17.

Therefore, since R.C. 3107.17 appears to specifically concern those department of human services records pertaining particularly to adoptions and placements, it encompasses the records at issue in the case *sub judice.* This conclusion is consistent with R.C. 1.51, which gives deference to the earlier special provision of a statute unless it is manifestly clear that the general should control.

Even if we were to adopt appellant's reasoning that R.C. 3107.17(D) concerning social and medical histories controls instead of R.C. 3107.17(B), the result would be the same. R.C. 3107.17(D) allows either the adoptive parents, or the adopted

child who has reached majority, to inspect the forms upon requesting the clerk of the court to produce them. Thus, even if we were to find that appellees did not initially pursue the proper method of uncovering those records regarding the social and medical history of J.C.'s biological parents, they would be permitted to do so under this provision.

■ Second, having established the applicability of R.C. 3107.17(B), it is clear that it provides for the qualified, not absolute, confidentiality of adoption records, subject to the consent of the court. Also, the statute does not explicitly condition the "consent of the court" requirement upon a particular test, thus evincing a legislative intent to place the inspection within the discretion of the court. As appellant correctly points out, none of the actual documents at issue, which could have been placed under seal here and have been made part of the record for our review, is before us. Thus, we cannot properly determine whether the trial court abused its discretion in permitting counsel to inspect their contents. In the absence of an adequate record, which was appellant's responsibility pursuant to App.R. 9, we must presume the validity of the trial court's action. *Volodkevich v. Volodkevich* (1989), 48 Ohio App.3d 313, 314, 549 N.E.2d 1237, 1238. Accordingly, we cannot evaluate the merits of this issue, and must affirm the trial court's decision. *Id.*

Third, as appellant correctly stated, J.C. is not a party to the proceeding. However, appellees took action to afford J.C., through his guardian *ad litem*, the option to respond to the motion to release additional adoption records by serving his guardian with a copy of the motion. According to the record before us, no response or objection by J.C.'s guardian to appellees' motion was made. Thus, any such objection to the release of the documents was again waived, absent plain error, and J.C. does not have standing to assert his right to confidentiality.

Fourth, even if R.C. 5153.17 did apply in this case, it is clear that the dictates of public policy would mandate disclosure of information likely to uncover fraud or misrepresentation. In *Davis v. Trumbull Cty. Children Serv. Bd.* (1985), 24 Ohio App.3d 180, 24 OBR 270, 493 N.E.2d 1011, this writer in his concurring opinion recognized that R.C. 5153.17 does not mandate absolute confidentiality, but rather suggests a balancing approach. A similar approach to the one advocated there has been adopted in the fairly recent United States Supreme Court case of *Pennsylvania v. Ritchie* (1987), 480 U.S. 39, 59, 107 S.Ct. 989, 1002, 94 L.Ed.2d 40, 58.

Though *Ritchie* involved a criminal defendant's Sixth and Fourteenth Amendment rights to discover favorable information from the state's children's services files, the principle is analogous when carried to its logical extension. The court in *Ritchie* stated that:

"A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the Commonwealth's files. * * * [T]his court has never held—even in the absence of a statute restricting disclosure—that a defendant alone may make the determination as to the materiality of the information." *Id.* at 59, 107 S.Ct. at 1002, 94 L.Ed.2d at 58–59.

Thus, the *Ritchie* court advocated use of a balancing exercise which would weigh the interests of both the defendant, who is seeking exculpatory information, and the state, which seeks to protect child abuse information.

The *Ritchie* court also advocated that a neutral arbiter decide the issue as opposed to allowing the parties alone to view the documents and decide what is or is not beneficial to their case. The court stated specifically that:

" * * * We find that Ritchie's interest * * * can be protected fully by requiring that the CYS files be submitted only to the trial court for *in camera* review." *Id.* at 60, 107 S.Ct. at 1002–1003, 94 L.Ed.2d at 59.

Similarly, we think the same practice should have been followed by the trial court in the instant case so that counsel do not unilaterally undertake this exercise. Accordingly, the trial court is the logical entity to make this determination, either itself or through the use of a special master or referee who will report to the trial court after having viewed the files.

Last of all, by its reference to *Voss*, which involved a privileged communication between a client and her social worker, appellant appears to suggest that the documents appellees seek are also privileged pursuant to R.C. 2317.02. However, our review of R.C. 2317.02 reveals that the records at issue here are not protected by the privilege statute.

Based on the foregoing, we find that appellant's assignment of error is without merit. The judgment of the trial court is thereby affirmed.

*Judgment affirmed.*

CHRISTLEY and NADER, JJ., concur.